## HAYNES STELLITE CO. v. CHESTER-FIELD CO. et al.

Circuit Court of Appeals, Sixth Circuit.
April 13, 1928.

No. 4645.

Patents ☞250—Infringement of patent for metal alloy judged by same principles as for mechanical combination.

Infringement of a claim covering the elements of a metal alloy is to be judged by the same general principles as a claim for a mechanical combination.

On petition for rehearing. Denied. For former opinion, see 22 F.(2d) 635.

Russell Wiles, of Chicago, Ill., for petitioner.

Chas. Neave, of New York City (Maxwell Barus, of New York City, on the brief), opposed.

Before DENISON and MOORMAN, Circuit Judges, and GORE, District Judge.

PER CURIAM. In a petition for rehearing, counsel again present the question of infringement, and so forcefully that we have re-examined that subject. We are not convinced that our conclusion was wrong. We have no occasion to doubt that infringement of a patent claim covering the elements of a metallic alloy is to be judged by the same general principles as a claim for a mechanical combination. Added elements may be merely improvements, adopting and based upon the infringement, or they may upset the combination and transform the whole into a new and different one. We have here a patent for an alloy composed of three metals, as specified. Those familiar with the art would understand that these metals would not be pure, but would contain some foreign matter; that carbon is one of these (commercially) inevitable impurities; and that the patented alloy would necessarily contain perhaps .3 per cent. of carbon. With that quantity it would be commercially carbon free.

The specification says that small amounts of other metals or nonmetallic substances may be added to the alloy to intensify certain qualities. This was one of the familiar uses of carbon; and Haynes, the inventor, in a scientific essay, published while the patent was pending, advised adding some carbon when the extremest hardness was desired. After its earliest productions, plaintiff has used a total of some 2 per cent. of carbon, and defendant, in its typical product, used about 1.3 per cent.—an addition of 1 per cent. Now we are told that this seemingly slight addition, made pursuant to the disclosure of the specification and the inventor's public advice, avoids infringement and shows the patent worthless. Needless to say, such an assertion, to be accepted, must produce conviction, not merely doubt.

Much of the proof as to the chemical and physical composition of the final alloy reveals probabilities and theories, rather than precise knowledge. As to the alloy of the patent in the high tungsten form, it may fairly be assumed that most of the cobalt and chromium and much of the tungsten remain in their ternary form, completely dissolved in each other, and that this occurs to the extent of their mutual capacity. Such excess of the chromium as there is, and the certainly substantial excess of the tungsten, beyond this capacity, become crystals which are held by the main body of the alloy as in a matrix, and which are the efficient cutting agent at high temperatures.

It is defendant's contention that even the merely 1 per cent. of carbon, which it adds, is enough to transform all the tungsten into a carbide, and that so the tungsten disappears from the picture. We are not satisfied to accept this conclusion. Carbon unites with chromium more easily than with tungsten; it unites with tungsten in different forms, which may merge more or less of the tungsten; the ultimate result will be, or at least may be, varied by attendant conditions; and it does not clearly appear that the composition of the matrix which holds the cutting crystals is materially changed by the carbon. Further, the doctrine of equivalency is applicable.

Counsel say that tungsten carbide is not tungsten any more than carbon dioxide is oxygen. The comparison may or may not be fair; but equivalency does not mean complete identity. It means rather substantial identity of result, accomplished by means not substantially different. Here an invention achieves a new range of efficiency; defendant's modified form occupies that same range. The matrix has the same qualities, and so

have the cutting crystals; and for this purpose and for this association, and within the scope of equivalency to which this invention is entitled, we cannot say that the tungsten carbide, found in defendant's article, is substantially different from the tungsten which the patent calls for. Walker says (section 370, p. 458) that "chemical equivalency is not necessary to legal equivalency in respect of a nonchemical use of such substance." This may not be universally true, but we accept it as applicable here.

It is to be noted that the claim does not call specifically for free tungsten, but rather implies only that tungsten has entered into the ultimate composition—"composed of;" nor does it appear that by the use of carbon the tungsten is made to disappear, any more than the cobalt and chromium are made to disappear in the alloy as described. Defendant's argument as to the use of carbon, if it were accepted, would seem to prove that the alloy claimed was not produced by the exact process described, and, of course, the claim of the patent could not be so construed.

The application for rehearing is denied.